# Emerson and Wall's Appeal.

A court of equity has no jurisdiction to appoint a receiver to take charge of an oil-producing well pending an ejectment brought to try the title to the possession of the premises.

June 22d 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ.   PAXSON, J., absent.

Appeal from the Court of Common Pleas of *McKean county:* Of May Term 1880, No. —.   In Equity.

Bill in equity filed by George K. Welch against Enos Emerson, Marcus Wall, F. A. Roter and Charles Spreter.

In April 1879, George K. Welch, commenced an action of ejectment against Enos Emerson for the land in dispute and caused a writ of estrepement to issue against him and others holding under him in actual possession.   F. A. Roter and Charles Spreter, tenants in possession of five acres of the land, gave bail in the sum of $1000, and had the writ of estrepement dissolved as to the five acres and completed the well they were boring.   The plaintiff, afterwards, on the 25th of July 1879, procured an *alias* writ of estrepement,

On the 10th of September following, Welch filed this bill and claimed the right to have a receiver appointed, because irreparable injury would result to him, unless the oil should be secured at once, by other wells sunk upon the land.   The defendant, Emerson, at the hearing had the same day, contended that he had the equitable title and right of possession.   The court, in consideration of the situation of the property and what they believed was necessary for its preservation to those really entitled, decided to appoint a receiver of five-sixteenths of the oil as royalty, pending the litigation between the parties, and adjudged the remainder to the working interest.

The action of ejectment came on and the trial resulted in a judgment for the plaintiff for the land, to be released on the payment of a certain sum within thirty days, with leave to defendant to pay the money into court.   (See preceding case of Welch *v.* Emerson. —REP.)   Emerson then paid the money into court, but the plaintiff in that case took a writ of error to the Supreme Court, and afterwards Emerson and Wall took this appeal.

In the present equity proceeding, the court, Williams, P. J., delivered the following opinion :—" The bill and affidavits in this case disclose a peculiar state of facts. An action of ejectment is pending between these parties, which was brought on 4th April 1879 ; on the same day an estrepement to stay waste was issued ; the land is valuable as oil land, and is surrounded on all sides by productive oil territory ; the map attached to the affidavit of A. I. Wilcox shows that no less than twenty-eight wells have been put down, or are in process of drilling near enough to the lines of this lot to draw oil from it ; within a short time its value will be greatly impaired if not wholly destroyed by the natural drainage from it by means of this large number of wells along its lines on adjoining lands.

" The plaintiff had the legal title and claims to have extinguished the defendant's equity and to have clothed himself with a complete title thereby.

" The defendant, Emerson, claims on the other hand to hold the equitable title under a contract made on the 23d of November 1872, which he insists has not been extinguished. The determination of the action of ejectment depends on this question. If the attempt to extinguish the equity by re-entry and sale under a provision in the contract of November 23d 1872, was authorized by and valid and effectual under the terms of that contract, the plaintiff must recover without condition ; if not, then his recovery must be conditional and such as to save the equitable title and rights acquired under it.

" Emerson claims to have leased to one Marcus Wall, another of the defendants in this case, in 1877 ; nothing, however, was done on the land by Wall until after the action of ejectment was commenced. On the 23d of April 1879, Wall sub-let to Doty. On the 26th of April 1879, Doty assigned to Roter & Spreter, who at once began work upon their lease. They gave bond and secured an order modifying the estrepement so far as to permit them to put down one well ; this well is finished and is producing at least one hundred and fifty barrels of petroleum daily ; they cannot operate further without giving additional bonds and securing another modification of the writ of estrepement ; they have a lease of oil land now known to be of great value. By the terms of their lease, they are bound to render one-fourth of the oil to Wall. What is needed for the interest of owners and lessees is to operate the territory before it is drained by adjoining owners who are crowding the lines on every side ; the writ of estrepement prevents this ; Wall does not give security and dissolve the writ, but insists on his one-fourth of the oil produced. The tenants cannot afford to furnish security necessary to secure the dissolution of the writ and take the chances of a recovery by Welch for the land and the mesne profits which they have accounted for and must in that case con-

tinue to account for to Wall.  Upon consideration of the situation of this property and what is necessary for its preservation to those really entitled, we have decided to appoint a receiver in accordance with the prayer of the bill, for five-sixteenths of the oil as royalty. The remainder appears by the affidavits to be a sufficient provision for the working interest, and the tenants express their willingness to operate the land actively upon this basis.

"The estrepement will be dissolved on motion made in the action of ejectment without further bail, and from this time forward the receiver will take charge of the royalty for the benefit of the successful party in that action ; in this way alone can the value of the land be saved to the owners ; the enforcement of the estrepement against the tenants will not save the oil, for if he does not obtain it his neighbors will.

"The tenants should not be required to furnish security for dissolving the writ and take all the chances of the litigation ; and their immediate landlord will do nothing to protect them or to dissolve the writ.

"We must, therefore, make the appointment, or the value of this land must be lost by its owners and gained by its crowding and grasping neighbors."

The court then made the following decree :

"And now, to wit: September 10th 1879, on hearing the bill, proofs and arguments of counsel, and upon due consideration thereof, it is ordered and decreed: That Samuel P. Boyer be appointed receiver of five-sixteenths of all the petroleum, oil and other minerals to be after this date produced, pumped or raised upon a certain piece of land mentioned in the plaintiff's bill, to wit, five acres from the west end of a certain tract situated in Keating township, McKean county, Pennsylvania, known as the Jesse L. Geary tract, and the same particularly described in the plaintiff's bill ; said five acres being that part thereof, of which defendants Roter & Spreter are now in possession under lease from defendant, Marcus Wall ; and the said defendants, Roter & Spreter, and their assignees, are ordered to deliver to said receiver the full and fair five-sixteenths of all the oil so pumped or raised upon said premises ; and the said defendants, Enos Emerson, Marcus Wall, F. A. Roter and Charles Spreter, their agents, servants and assignees are enjoined and restrained from interfering with, or in any manner hindering said receiver in entering upon said premises, demanding, receiving and taking the said five-sixteenths of the oil, &c., as above directed ; and the said receiver is empowered and authorized to sell and convert the said oil and other minerals into money from time to time ; the said oil and minerals, as well as the avails thereof, to be held pending litigation between the parties to this case, subject to the control and until the further order of the court ; and it is further ordered that the receiver give a bond in

[Emerson and Wall's Appeal.]

the sum of $20,000, with sufficient sureties to be approved by the court or a law judge thereof, for the faithful performance of his duties. No order to issue until the plaintiff shall file a bond with sufficient surety or sureties in the sum of $2000, conditioned that said plaintiff will save harmless and indemnify the defendants against any loss or damage by reason of this order and decree." ·

From this decree Emerson and Wall took this appeal.

*David Sterrett, N. B. Smiley, Berry & Elliott* and *William M. Boggs*, for appellants.—The court had no authority to appoint a receiver in a case such as the one at bar : Kerr on Receivers 111 ; Schlecht's Appeal, 10 P. F. Smith 175.

*Clark & Noyes, A. G. Olmstead* and *C. B. Curtis*, for appellee. —This is not merely a case of conflicting titles, like Schlecht's Appeal, in which the effect was, practically, to turn the defendants out of possession by a bill in equity. SHARSWOOD, J., in that case says : " An injunction and receiver are resorted to in any case only to preserve property in statu quo pending a contest. For any waste the law has provided a remedy by estrepement, or an injunction may be obtained if preferred, but anything like an averment of waste is not to be found in this bill." The appointment of a receiver rests in the sound discretion of the court : Milwaukee Railroad Co. *v.* Soutter, 2 Wallace 521. A court of equity will interfere, even in cases of disputed titles, when the peculiar circumstances seem to require it, even where the cause is pending in another court : Daniels's Chancery, vol. 2, 1725, 4th ed : Kerr on Receivers 13. If the remedy afforded by the courts of ordinary jurisdiction is inadequate for the purposes of justice, the Court of Chancery will, on a proper case being made out, *ex debito justitiæ,* appoint a receiver : Kerr on Receivers 1, 2. The jurisdiction to appoint receivers in similar cases, was fully recognised in Chicago & Allegheny Oil & Min. Co. *v.* U. S. Petroleum Co., 12 P. F. Smith 83, though in that case the decree was refused on the merits of the case. Equity will restrain a purchaser who has obtained possession without paying the purchase-money from committing waste : Crawford *v.* Alexander, 15 Vesey 138 ; Kerr on Injunctions 263, 288.

Chief Justice SHARSWOOD delivered the opinion of the court, October 4th 1880.

It may be very convenient wherever there is an adverse claimant to an oil well that the court should have power to appoint a receiver to take possession of it and work it for the benefit of the successful litigant. It may be that if the tenant in possession is obstinate and will not give security to dissolve an estrepement, the effect of the execution of the writ may be, that the entire ter-

ritory will be pumped dry by wells sunk on surrounding property, and thus the value of it be destroyed as to both parties. But will that consideration give a court of equity jurisdiction of a mere ejectment bill, and the power to take possession of the land in controversy? We think not. The legislature may, perhaps, be competent to give some remedy, taking care to preserve to the defendant his constitutional right of trial by jury. The mere granting of an issue in the discretion of the chancellor is not enough. For the courts to assume such a jurisdiction would, we think, be a clear case of judicial legislation.

Decree reversed and bill dismissed with costs.